# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIKA EBERHARDINGER,** | : | CIVIL ACTION NO. 1:16-CV-2481 |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | |
| **CITY OF YORK**, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Erika Eberhardinger ("Eberhardinger") commenced this action against the City of York, York City Police Officer Benjamin Praster ("Officer Praster"), York City Police Officer Benjamin Smith ("Officer Smith"), Matthew Foster ("Foster"), and State Farm Mutual Automobile Insurance Company pursuant to 42 U.S.C. § 1983 and state law. (See Doc. 1). Before the court is a motion (Doc. 9) to dismiss filed by defendants City of York, Officer Praster, and Officer Smith (collectively, the "York defendants"). For the reasons that follow, the court will grant the motion in part and deny the motion in part.

**I.      Factual Background & Procedural History**

On December 19, 2014, Eberhardinger, Foster, and Mason Millen ("Millen") left Banana Max Bar & Grill in York, Pennsylvania by vehicle at approximately 1:45 a.m. (Doc. 1 ¶¶ 19-20). Foster drove, Eberhardinger sat in the front passenger seat, and Millen sat in the back seat behind Eberhardinger. (Id. ¶ 20). Shortly thereafter, Foster failed to stop at a stop sign. (See id. ¶¶ 21-22). Officer Praster witnessed this

and pursued Foster. (Id.) When Foster did not pull over, Officer Praster continued to follow the vehicle and radioed for assistance. (Id. ¶¶ 23, 56, 57(b), 57(i)).

Officer Smith responded to Officer Praster's request and joined the pursuit. (Id. ¶ 24). Foster saw Officer Smith's vehicle approaching from the west and started to reverse toward Officer Praster who was following him from the east. (Id. ¶¶ 24-26). Officer Smith exited his patrol car and approached Foster's vehicle on foot. (Id. ¶ 26). Foster crashed the vehicle into a telephone phone while in reverse and then attempted to drive past Officer Smith. (Id. ¶¶ 26-28, 56). Officer Smith fired four shots at the windshield of the vehicle to stop Foster from driving past him. (Id. ¶¶ 29-30). The shots struck Eberhardinger in the face, forearm, and hand. (Id. ¶ 30).

Eberhardinger commenced the instant action on December 15, 2016. (Doc. 1). Against the York defendants, Eberhardinger asserts the following claims: an excessive force claim pursuant to 42 U.S.C. § 1983 against Officers Praster and Smith (Count I), a state law negligence claim against Officers Praster and Smith (Count II), and Monell claims against the City of York (Counts III and IV). The York defendants move to dismiss all claims brought against them under Federal Rule of Civil Procedure 12(b)(6). (Doc. 9). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

2

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108

3

(3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires," FED. R. CIV. P. 15(a)(2).

## III. Discussion

Eberhardinger asserts claims against Officers Praster and Smith under Section 1983 for excessive force in violation of her constitutional rights under the Fourth Amendment. Eberhardinger also brings Monell claims against the City of York for failure to train and discipline and for permitting a widespread persistent pattern of unconstitutional conduct. Finally, Eberhardinger avers a state law negligence claim against both officers. The York defendants challenge the sufficiency of each claim. The court will address these issues *seriatim*.

### A. Section 1983 Claims

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. See 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). The defendants do not dispute that they were state actors at all times relevant herein. We must thus determine whether any

4

defendants' conduct deprived Eberhardinger of rights secured by the United States Constitution.

   1. ***Excessive Force***

In the case *sub judice*, Eberhardinger avers that both officers used excessive force in violation of the Fourth Amendment. Officers Praster and Smith each invoke the doctrine of qualified immunity. The court will thus address Eberhardinger's excessive force claim through the prism of the qualified immunity doctrine.

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The defense generally "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the record evidence, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). A court may begin its qualified immunity analysis with either prong. See Pearson, 555 U.S. at 237. The right to be free from the excessive application of force during lawful arrests is clearly established. See Kopec v. Tate, 361 F.3d 772, 776-78 (3d Cir. 2004). Hence, we need only determine whether Eberhardinger alleges a violation of that right.

To state a claim for excessive force under the Fourth Amendment, Eberhardinger must allege: (1) that a seizure occurred, and (2) that it was unreasonable. Id. at 776 (quoting Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003)). A police pursuit, absent aggravating circumstances, does not constitute a "seizure" within the meaning of the Fourth Amendment. See Cty. of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998); Carroll v. Borough of State College, 854 F. Supp. 1184, 1190 (M.D. Pa. 1994). An aggravating circumstance is one in which police took some "direct or intervening action to halt the vehicle in a violent or sudden manner likely to cause injury to the occupants." Carroll, 854 F. Supp. at 1190 (citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)). Such circumstances include, for example, erecting a roadblock that makes it impossible for the vehicle to stop without injury to the driver or passengers or using deadly force to stop the vehicle. See id.

The reasonableness of force used in effecting a seizure depends upon the totality of the circumstances. Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999). The court must determine whether the officer's actions were "objectively reasonable" in view of "the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). This reasonableness assessment "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. Courts consider three main factors in determining reasonableness: (1) the severity of the underlying crime, (2) any immediate threat posed by the subject, and (3) whether the suspect actively resisted arrest. Id. Additional factors may include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997); Fisher v. Matthews, 792 F. Supp. 2d 745, 774 (M.D. Pa. 2011).

### a. Officer Praster

As to Officer Praster, Eberhardinger contends only that he pursued the vehicle after Foster failed to stop at a stop sign and radioed for assistance when Foster did not pull over. (Doc. 1 ¶¶ 21-23, 25). Eberhardinger does not articulate any aggravating circumstances that would enable the court to consider Officer Praster's pursuit a seizure under the Fourth Amendment. See Carroll, 854 F. Supp.

7

at 1190.  Hence, on the facts alleged, Officer Praster is entitled to qualified immunity.

### b. Officer Smith

As to the claim against Officer Smith, the parties do not dispute that Officer Smith's use of his gun to prevent Foster from fleeing constituted a seizure. The sole issue is whether the force used by Officer Smith was unreasonable. (See Doc. 9-3 at 6-9; Doc. 27 at 6-9). Eberhardinger contends that Officer Smith fired four shots at the windshield of the vehicle when Foster attempted to flee despite the fact that Foster was unarmed and had passengers in the vehicle. (Doc. 1 ¶¶ 20, 29-30). We find that Eberhardinger adequately alleges that Officer Smith used unreasonable force and thus violated her constitutional rights under the Fourth Amendment. Hence, the court cannot grant qualified immunity to Officer Smith at this procedural juncture. Accordingly, we will deny the York defendants' motion to dismiss the excessive force claim against Officer Smith.

### 2. *Monell* Liability

Municipalities and other local government entities are "persons" for purposes of Section 1983 liability. Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658, 690 (1978). But such entities may not be held liable in a Section 1983 suit for conduct of their employees under a theory of *respondeat superior* liability. Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 692); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Municipal liability only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy. Monell, 436 U.S. at 690-94;

see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability under Monell, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

A policy exists when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation, policy, or edict. Id. at 584 (quoting Kneipp, 95 F.3d at 1212). By contrast, a custom is an act that is not formally approved but is nonetheless "so widespread as to have the force of law." Id. (quoting Bryan Cty., 520 U.S. at 404). A plaintiff may also establish municipal liability by demonstrating that a policymaker failed to take affirmative action despite an obvious need to correct the "inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights" that inaction exhibits "deliberate indifference" to the need. Id. (quoting Bryan Cty., 520 U.S. at 417-18).

A government entity exhibits deliberate indifference when it "disregard[s] a known or obvious consequence of [its] . . . action." Connick v. Thompson, 563 U.S. 51, 61 (2011); see Vargas v. City of Phila., 783 F.3d 962, 974 (3d Cir. 2015). Failure to train amounts to deliberate indifference when it causes a pattern of cognate constitutional violations. See Connick, 563 U.S. at 62; Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010). Alleged training deficiencies must closely relate to the constitutional injury. City of Canton v. Harris, 489 U.S. 378, 391 (1989). The

9

failure-to-act theory of liability is governed by the same causation principles. See Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

The York defendants argue that the complaint is completely devoid of facts to support a Monell claim and fails to meet the pleading requirements of the Federal Rules of Civil Procedure. (Doc. 9-3 at 15). We agree. Eberhardinger's allegations of municipal liability are purely conclusory. Eberhardinger avers that the training and discipline practices of the York City Police Department have been "inadequate" for years, (see Doc. 1 ¶¶ 41-43), but fails to identify a single constitutional violation sufficient to suggest deliberate indifference on behalf of the City of York. Her examples of improper training and discipline all relate to the events of December 19, 2014, (see id. ¶¶ 41-42), yet she somehow concludes that "[t]he pattern of training and discipline deficiencies was so pervasive as to constitute 'customs' with the force of law," (see id. ¶ 44).[1] In the absence of factual allegations relating to previous similar incidents Eberhardinger fails to plead a custom of inadequate training or discipline. See Godnig v. Stroud Area Reg'l Police Dep't, No. 3:15-2292, 2016 WL 4440282, at *9 (M.D. Pa. Aug. 23, 2016).

Eberhardinger also contends that the City of York permitted a widespread, persistent pattern of unconstitutional conduct by York City police officers. (See Doc. 1 ¶ 48). But she again fails to describe a single instance, other than the events

---

[1] The court recognizes that the United States Supreme Court has indicated that a single incident may evince deliberate indifference when "the need to train officers . . . can be said to be so obvious" in itself and the lack thereof would perforce lead to recurrent rights violations. City of Canton, 489 U.S. at 390 n.10; see also Thomas v. Cumberland Cty., 749 F.3d 217, 223-25 (3d Cir. 2014). Eberhardinger does not argue that this theory applies. (See Doc. 1 ¶¶ 44, 46).

10

of December 19, 2014, to support this claim. (See id. ¶ 48). Without more, Eberhardinger has not plausibly alleged a "pattern" of known constitutional violations amounting to an unofficial custom of the City of York. See Tereo v. Smuck, No. 1:16-CV-1436, 2017 WL 2080193, at *9 (M.D. Pa. May 15, 2017) (Conner, C.J.). Hence, the court will grant the York defendants' motion to dismiss both Monell claims.

**B.     Negligence**

Eberhardinger asserts a state law claim for negligence against Officers Praster and Smith. The York defendants contend that this claim is barred by the immunity afforded under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 PA. STAT. AND CONS. STAT. ANN. § 8541 *et. seq.*, and should be dismissed. The PSTCA immunizes local agencies from liability for damage "on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Id. § 8541. An employee of a local agency is "liable for civil damages . . . only to the same extent as his employing local agency." Id. § 8545. Accordingly, in order to maintain a negligence claim against an employee of a local agency covered by the PSTCA, a plaintiff must demonstrate that an enumerated exception to the Act's broad grant of immunity applies. See id. § 8542. Eberhardinger does not argue, and the court does not find, that any of the eight exceptions apply. (See Doc. 24 at 12-13).

The PSTCA also exempts from its protective scope any employee whose act constitutes "a crime, actual fraud, actual malice or willful misconduct." 42 PA. STAT. AND CONS. STAT. ANN. § 8550; Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir.

2006). Willful misconduct is conduct which evinces that the employee "desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Sanford, 456 F.3d at 315 (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)). It is synonymous with the term "intentional tort." Id. The complaint avers that Officers Praster and Smith acted negligently, not that they acted criminally, fraudulently, maliciously, or willfully. (See Doc. 1 ¶¶ 35-38). Hence, Eberhardinger fails to plausibly allege facts to overcome governmental immunity. We will grant the York defendants' motion to dismiss the negligence claim as to both officers.[2]

### C. Leave to Amend

The Third Circuit Court of Appeals requires courts to grant leave to amend in civil rights cases when a curative amendment is conceivable. See Fletcher-Harlee Corp., 482 F.3d at 251; Grayson, 293 F.3d at 108. Because Eberhardinger's claims are factually rather than legally flawed, the court will grant Eberhardinger the opportunity to amend her pleading with respect to the claims dismissed herein, as more fully articulated in the forthcoming order.

---

[2] Eberhardinger asks the court to consider "willful misconduct" as an alternative theory of liability. (See Doc. 24 at 12-13). The court need not address Eberhardinger's belated assertion, as "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)). Nonetheless, the court notes that "willful misconduct" is not a recognized cause of action under Pennsylvania law. Booze v. Wetzel, No. 1:12-CV-01307, 2017 WL 2991801, at *11 (M.D. Pa. May 25, 2017); Jackson v. Davis, No. 2:13-CV-1717, 2014 WL 3420462, at *21 (W.D. Pa. July 14, 2014).

## IV. Conclusion

The court will grant in part and deny in part the York defendants' motion (Doc. 9) to dismiss. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: September 20, 2017