IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIKA EBERHARDINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-CV-02481-CCC |
| | ) | |
| CITY OF YORK, | ) | |
| BENJAMIN SMITH, | ) | (Chief Judge Connor) |
| MATTHEW FOSTER, | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, STATE FARM FIRE | ) | |
| & CASUALTY COMPANY, | ) | |
| STATE FARM INSURANCE | ) | |
| COMPANY, STATE FARM | ) | JURY TRIAL DEMANDED |
| COMPANIES, STATE FARM, | ) | |
| and STATE FARM INSURANCE | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

COMES NOW, Plaintiff, ERIKA EBERHARDINGER, by and through her attorneys, ARM Lawyers, by Joshua B. Goldberg, Esquire, and Patrick J. Best, Esquire and hereby sets forth the following allegations in support of her Amended Complaint:

## JURISDICTION and VENUE

1. This action arises under the United States Constitution, particularly under the Fourth and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. §1983, and the laws of the Commonwealth of Pennsylvania. This Honorable Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 and 1367.

2. Venue is founded in this Court upon 28 U.S.C. §1391 as the acts of which Plaintiff complains arose in this District.

## PARTIES

3. At all relevant times, ERIKA EBERHARDINGER ("EBERHARDINGER") was a citizen of the United States of America and was, therefore, entitled to all legal and constitutional rights afforded citizens of the United States of America.

4. On December 19, 2014, EBERHARDINGER was a front seat passenger in a vehicle driven by MATTHEW FOSTER ("FOSTER").

5. On December 19, 2014, this vehicle was pursued by BENJAMIN PRASTER ("PRASTER") of the York City Police Department ("YCPD").

6. On December 19, 2014, EBERHARDINGER was shot three times by BENJAMIN SMITH ("SMITH") of the YCPD.

7. At all relevant times, including December 19, 2014, SMITH was employed by the City of York ("CITY") and/or the YCPD as police officers and acted under the color of state law. At all relevant times, SMITH was trained in police work, including, but not limited to, the Fourth Amendment of the United States Constitution, lawful search and seizure and the limitations placed upon the use of deadly force.

8. At all relevant times, the CITY was a municipality organized and existing under the laws of the Commonwealth of Pennsylvania. At all relevant times, the CITY was located in the County of York, Commonwealth of Pennsylvania, and was the employer of the individually-named defendant SMITH.

9. At all relevant times, the YCPD was an agency of the CITY.

10. At all times material, including December 19, 2014 and for years prior thereto, the CITY and/or the YCPD had final policy-making authority in terms of creating, adopting, implementing and/or enforcing policies within the YCPD, whether formal or informal.

11. The CITY and/or the YCPD provided at least some excessive and/or deadly force training to SMITH.

12.   At all times pertinent hereto, EBERHARDINGER was a front seat passenger and vehicle oriented in the vehicle operated by FOSTER and insured by STATE FARM MUTUAL AUTOBILE INSURANCE COMPANY, STATE FARM FIRE & CASUALTY COMPANY, STATE FARM INSURANCE COMPANY, STATE FARM COMPANIES, STATE FARM, and STATE FARM INSURANCE (hereinafter collectively referred to as "STATE FARM DEFENDANTS" and/or "STATE FARM").

13.   Plaintiff believes and, therefore, avers that Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY is a duly registered Illinois Corporation with its corporate headquarters located at One State Farm Plaza, Bloomington, McLean County, Illinois 61710.

14.   Plaintiff believes and, therefore, avers that Defendant STATE FARM FIRE & CASUALTY COMPANY is a duly registered Illinois Corporation with its corporate headquarters located at One State Farm Plaza, Bloomington, McLean County, Illinois 61710.

15.   Plaintiff believes and, therefore, avers that Defendant STATE FARM INSURANCE COMPANY is a duly registered Illinois Corporation with its corporate headquarters located at One State Farm Plaza, Bloomington, McLean County, Illinois 61710.

16.     Plaintiff believes and, therefore, avers that Defendant STATE FARM
        COMPANIES is a duly registered Illinois Corporation with its corporate
        headquarters located at One State Farm Plaza, Bloomington, McLean
        County, Illinois 61710.

17.     Plaintiff believes and, therefore, avers that Defendant STATE FARM
        is a duly registered Illinois Corporation with its corporate headquarters
        located at One State Farm Plaza, Bloomington, McLean County, Illinois
        61710.

18.     Plaintiff believes and, therefore, avers that Defendant STATE FARM
        INSRUANCE is a duly registered Illinois Corporation with its corporate
        headquarters located at One State Farm Plaza, Bloomington, McLean
        County, Illinois 61710.

## FACTUAL ALLEGATIONS

19.     At   approximately   1:45   am   on   December   19,   2014,
        EBERHARDINGER,   FOSTER,   and   Mason   Millen   ("MILLEN")   left
        Banana Max Bar & Grill in York, Pennsylvania.

20.     EBERHARDINGER, FOSTER, and MILLEN departed Banana Max
        toward MILLEN's home in York, Pennsylvania with FOSTER driving the
        vehicle owned by EBERHARDINGER, and insured by STATE FARM, in
        which EBERHARDINGER was the front passenger, and MILLEN was in

the back seat, passenger side.

21.   At approximately 2:00 am, PRASTER was stopped at Wallace Street and State Street, York, Pennsylvania, facing west.

22.   As FOSTER began to drive down Wallace Street, PRASTER began to pursue FOSTER, purportedly as a result of FOSTER failing to stop at a stop sign.

23.   PRASTER followed FOSTER through York to the intersection of Gay Street and Newberry Street. At some time during this pursuit, PRASTER radioed for assistance from other police officers.

24.   SMITH responded to PRASTER's request and began to travel down Gay Street headed east.

25.   FOSTER headed down Gay Street headed west, followed by PRASTER.

26.   Upon seeing SMITH's vehicle, FOSTER began to reverse his vehicle toward PRASTER as SMITH exited his vehicle and pursued FOSTER on foot.

27.   Despite the fact that he did not see FOSTER with a weapon, SMITH immediately drew his gun upon exiting his vehicle, thereby escalating the encounter, and began to approach FOSTER.

28.   FOSTER placed EBERHARDINGER'S vehicle, in which she was a

passenger and which was insured by STATE FARM, in reverse and struck a telephone pole.

29.    FOSTER then began to drive the vehicle he was operating forward, past SMITH, in an attempt to flee.

30.    As FOSTER attempted to flee, SMITH fired four shots at the car, at least one of which was fired after the vehicle had partially past him, striking EBERHARDINGER in the face, forearm, and hand.

31.    At least one shot hit the windshield of the vehicle.

32.    At least one shot went through the open driver's side window.

## AMENDED COUNT I
**SMITH for EXCESSIVE FORCE**
**In VIOLATION of FOURTH AMENDMENT**

33.    Plaintiff hereby incorporates the preceding paragraphs as if they were set forth at length herein.

34.    The force used by SMITH was excessive, unnecessary and objectively unreasonable, and proximately caused EBERHARDINGER's personal injuries, pain, suffering, and emotional distress.

35.    The conduct of SMITH proximately caused a deprivation of the rights, privileges and immunities secured to EBERHARDINGER by the Fourth and Fourteenth Amendments to the United States Constitution and laws enacted thereunder. With this conduct, SMITH showed a reckless or

callous     indifference     to     the     federally-protected     rights     of
EBERHARDINGER.

36.    The violence committed by SMITH was in violation of the Fourth and

Fourteenth   Amendment   rights   of   EBERHARDINGER   and   her

beneficiaries,  including  due  process.  Therefore,  SMITH  is  liable  to

PLAINTIFF in damages pursuant to 42 U.S.C. §1983, including loss of

liberty interest, conscious pain and suffering and  punitive damages.

    **WHEREFORE**, PLAINTIFF prays for judgment against SMITH in an

amount  which  will  fully  and  fairly  compensate  PLAINTIFF  for  damages

suffered.

### AMENDED COUNT II
### CITY for FAILURE to TRAIN

37.    Plaintiff hereby incorporates the preceding paragraphs as if they were

set forth at length herein.

38.    The YCPD and the CITY have a duty to properly train and discipline

YCPD  officers,  so  that  those  officers  do  not  violate  the  constitutional

rights of persons with whom they come into contact.

39.    That the training practices of the YCPD are inadequate in the

following ways:

    a. Failure  to  properly  train  YCPD  officers  on  the  United  States

        Constitution,  the  Fourth  Amendment  and  the  proper  uses  of

deadly force;

b. Failure to properly train YCPD officers on proper search and seizures, with or without a warrant;

c. Failure to properly train YCPD officers on public safety considerations when discharging a firearm near persons, automobiles or dwellings;

d. Failure to properly train YCPD officers when to draw and when not to draw their weapon;

e. Failure to properly train YCPD officers to avoid shooting car windshields;

f. Failure to properly train YCPD officers to avoid shooting moving vehicles;

g. Failure to properly train YCPD officers as to the efficacy of shooting the windshield and/or engine block of a moving vehicle ;

h. Failure to properly train YCPD officers to avoid or plan to avoid uses of deadly force;

i. Failure to properly train YCPD officers as to when deadly force is appropriate;

j. Failure to properly train YCPD officers as to efficacy of pursuing moving vehicles by foot;

k. Failure to properly train YCPD officers as to the escalation of police encounters by drawing the officers' weapon;

l. Failure to properly train YCPD officers as to use of deadly force after the alleged threat of bodily harm has been extinguished; and

m. Failure to properly train YCPD officers to make educated assumptions about possible suspects in routine traffic stops.

40. More specifically, SMITH has testified that he was trained to shoot at a windshield of a car as a "last resort".

41. In order for an officer to make sound decisions about firing their guns at vehicles, the officer must not let the situation get to that point. Officers should instead let suspects escape in their cars without confrontation, and get a warrant.[1]

42. Shooting a driver of a vehicle does not stop a car. In reality, the scenario typically plays out much differently: police officers who shoot at moving cars miss their targets far more than they hit them, unintentionally striking nearby bystanders.[2]

43. As a result of the research from policing experts, other police departments in the Commonwealth of Pennsylvania, such as the

---

[1] Chuck Wexler, Executive Director of the Police Executive Research Forum, Cops Shooting at Cars: A Really Bad Idea: https://www.themarshallproject.org/2015/06/10/cops-shooting-at-cars-a-really-bad-idea.
[2] Geoffrey Alpert, policing expert at the University of South Carolina, Cops Shooting at Cars: A Really Bad Idea: https://www.themarshallproject.org/2015/06/10/cops-shooting-at-cars-a-really-bad-idea.

Philadelphia Police Department, have updated their policies regarding shooting at windshields as early as 2002.[3] The policy was updated to limit shooting at windshields.

44.    The Philadelphia Police Department has therefore updated its policy regarding shooting at windshields twelve (12) years prior to December 19, 2014.

45.    Moreover, when the Philadelphia Police Department made this policy change, officers were repeatedly informed of those changes in daily team meetings and were subsequently asked to "sign-off on a written copy of the updated policy."[4]

46.    Despite the consensus of other police departments to adopt policies against shooting at windshields, the YCPD and the CITY have maintained a policy which permits officers to discharge firearms at the drivers of vehicles in an effort to stop the vehicle.

47.    As a result, YCPD and CITY have trained their officers to shoot at windshields rather than training them to allow a suspect to flee and obtain a warrant.

48.    This policy is contrary to the consensus of police departments and has been contrary to this consensus for approximately twelve (12) years.

---

[3] https://www.themarshallproject.org/2015/06/10/cops-shooting-at-cars-a-really-bad-idea
[4] Lt. John Stanford, a Philadelphia police spokesman, Cops Shooting at Cars: A Really Bad Idea:
https://www.themarshallproject.org/2015/06/10/cops-shooting-at-cars-a-really-bad-idea.

49.   By maintaining this policy and by failing to adopt a policy limiting police officer's use of force on drivers of vehicles and by failing to train its officers to refrain from shooting at windshields, the YCPD and CITY failed to take affirmative action despite an obvious need to correct the inadequacy of existing practice.

50.   Failure to act in this instance was not only likely to result in the violation of constitutional rights, but did in fact result in the violation of constitutional rights – namely those of EBERHARDINGER.

51.   This inaction – for twelve (12) years – exhibits "deliberate indifference" to the need to correct the inadequacy of existing practice.

52.   By maintaining this policy and by failing to adopt a policy limiting police officer's use of force on drivers of vehicles for approximately twelve (12) years after police departments began to limit such policies, YCPD and the CITY have demonstrated reckless or callous indifference to the rights of its citizens.

53.   The decision to maintain this policy – rather than to conform to the consensus – was a deliberate or conscious choice by the YCPD and the CITY.

54.   As this training deficiency was present for approximately twelve (12) years prior to December 19, 2014, the deficiency was so pervasive as to

constitute a "custom" with the force of law.

55.   It is believed, and therefore averred, that officers of the YCPD have shot at several suspects in vehicles rather than obtaining a warrant for twelve (12) years prior to December 19, 2014.

56.   It is believed, and therefore averred, that officers of the YCPD have shot at several windshields of vehicles for twelve (12) years prior to December 19, 2014.

57.   In addition to EBERHARDINGER, it is believed, and therefore averred, that officers of the YCPD have violated the constitutional rights of other citizens as a result of this custom for twelve (12) years.

58.   The custom described above was a moving force behind the violations of EBERHARDINGER's constitutional rights committed by SMITH and proximately caused EBERHARDINGER's personal injuries, pain, suffering, and mental anguish. The custom described above also proximately caused a deprivation of the rights, privileges and immunities secured to PLAINTIFF by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, including due process, and laws enacted thereunder.

59.   As a result of the customs described above, EBERHARDINGER was subjected to excessive force and caused injury. As a result, the YCPD

and the CITY are liable to Plaintiff in damages under 42 U.S.C. §1983, including loss of liberty interest, and conscious pain and suffering.

**WHEREFORE**, PLAINTIFF prays for judgment against the YCPD and the CITY in an amount which will fully and fairly compensate PLAINTIFF for damages suffered.

## AMENDED COUNT III
## FOSTER for NEGLIGENCE

60.   Plaintiff hereby incorporates the preceding paragraphs as if they were set forth at length herein.

61.   FOSTER intentionally consumed alcohol/marijuana, with reckless indifference and willful and wanton disregard for the rights of others, and with reckless indifference and willful and wanton disregard for the rights of others proceeded to operate a motor vehicle with a high probability of causing harm to others.

62.   FOSTER owed a duty to operate the vehicle he was driving in a safe and reasonable manner under the circumstances, which duty he breached by engaging in the negligent acts and/or reckless acts and omissions set forth herein below, and as a direct and proximate result thereof, caused the injuries and damages sustained by EBERHARDINGER set forth herein below.

63.   As a direct and proximate result of the breach of the duty of care

owed by FOSTER, the vehicle he was operating, in which EBERHARDINGER was a passenger, fled law enforcement authorities and crashed into a telephone pole, thereby causing EBERHARDINGER to suffer serious, significant, and potentially permanent and disabling injuries described herein below.

64.  The negligence of FOSTER consists of one or more of the following:

a. Violating the rules of the roadways of the Commonwealth of Pennsylvania, by operating a motor vehicle under the influence of alcohol and/or marijuana in violation of 75 Pa.C.S.A. §3802(a)(1), 75 Pa.C.S.A. §3802(b) and 75 Pa.C.S.A. §3802(d)(1) which conduct constitutes negligence *per se*;

b. Violating the rules of the roadways of the Commonwealth of Pennsylvania and violating statutory duties of care, by carelessly operating his vehicle in violation of 75 Pa.C.S.A. §3714, by operating a motor vehicle in a reckless manner, in violation of 75 Pa.C.S.A. §3736; by endangering the life of another individual in violation of 18 Pa.C.S.A. §2705, by driving with a suspended driver's license in violation of 75 Pa.C.S.A. §1543(a) and by fleeing and attempting to elude police in violation of 75 Pa.C.S.A. §3733, all of which conduct constitutes negligence *per se*;

c. Failing to operate his vehicle with due care and caution under the circumstances then and there existing;

d. Driving too fast for conditions and failing to timely apply his brakes to avoid the accident/incident/collision;

e. Failing to properly observe the road conditions, geographic contours, safe stopping distance and assured clear distance of the road and intersection then and there existing;

f. Failing to maintain proper control over the vehicle he was operating at the time of the accident/incident/collision;

g. Failing to take all reasonable and necessary precautions to avoid the subject accident/incident/collision;

h. Failing to heed law enforcement orders and instructions;

i. Failing to stop his vehicle when instructed to do so, thereby causing the subject accident/incident/collision.

j. Driving his vehicle while impaired due to the consumption/use of alcohol/marijuana.

65.    As a direct and proximate result of the above described negligence of FOSTER, EBERHARDINGER has sustained and suffered serious, severe, significant, and potentially permanent and disabling injuries, which include, but are not limited to, the following:

a. Lumbar pain, lumbar sprain/strain, cervical sprain/strain, cervical pain;

b. Acute respiratory failure, hemorrhage from the tracheostomy stoma, tracheostomy;

c. Acute posthemorrhagic edema, hypocalcemia, hypovolemia, hypopotassemia, extensive posttraumatic soft tissue edema in the neck region;

d. Anxiety, depression, post traumatic stress disorder;

e. Left hip pain,

f. Sprain/strain carpometacarpal joint hand, nonunion of fracture;

g. Acquired deformity of forearm, laceration right lower forearm, gunshot wound to the right forearm, right ulnar nerve palsy, ulnar nerve lesion;

h. Laceration left side of chin, left facial upper cervical gunshot wound resulting in submental and submandibular edema with airway compromise, comminuted parasymphysis fracture of the left body mandible, gunshot wound of neck; gunshot wound of the chin with complication;

i. gunshot would left hand, left long finger metacarpal neck fracture, gunshot wound to the right hand, left middle finger gunshot with

segmental bone loss of the middle finger metacarpal plus rupture of the extensor digitorum communis of the left middle finger;

j.  Multiple scars/deformities to neck, face/jaw, right forearm and left hand;

k.  Injury to her soft tissues, including, but not limited to injury of the skin, muscles, blood vessels, nerves and ligaments in proximity to the above described areas and other parts of her body, including her head, arms, legs and torso and/or

l.  An aggravation of the within preexisting conditions.

66.   As a direct and proximate result of the negligence of FOSTER, and the injuries sustained by EBERHARDINGER, as a result thereof, EBERHARDINGER has, and presently endures pain and suffering and may continue to endure pain and suffering into the future.

67.   As the direct and proximate result of the negligence of FOSTER, EBERHARDINGER has incurred numerous medical expenses associated with the medical care and treatment necessitated by the accident/incident/collision and may incur the same into the future, and may be subject to a lien by the insurance carrier, who paid such medical bills, against any damages obtained as a result of this action.

68.   The medical care and treatment endured by EBERHARDINGER as a

result of this accident/incident/collision has been reasonable and necessary for improving and alleviating her pain and symptoms.

69.   As a direct and proximate result of the negligence of FOSTER, EBERHARDINGER has undergone and experienced great humiliation, embarrassment, inconvenience and has endured the loss of pleasure of life with her injuries and scarring affecting her ability to engage in her daily activities, hobbies or to engage in gainful employment in the same manner she was able to prior to the accident/incident/collision.

70.   As a direct and proximate result of the negligence of FOSTER, EBERHARDINGER has suffered a wage loss and sustained impairment of her future earning capacities and/or her economic horizons.

71.   At all times relevant hereto, EBERHARDINGER was not comparatively negligent for her injuries.

72.   At all times relevant hereto, EBERHARDINGER was covered by an auto insurance policy that provided the full tort option, which allows her to recover non-economic damages even if her injuries are determined not to be serious.

73.   As a result of the care provided, EBERHARDINGER has incurred a debt and obligation of subrogation to insurers, the Department of Public Welfare, Medicare/Medicaid and/or medical providers in an amount not

yet fully ascertained for services, which were reasonable and necessary in an effort to cure her sustained injuries.

74.    The above set forth reckless acts and omissions of FOSTER and specifically the reckless acts and omissions surrounding the operation of a motor vehicle while under the influence of alcohol/marijuana, constitute conduct that is outrageous and undertaken with reckless indifference to the rights of EBERHARDINGER, which conduct was a substantial contributing factor to causing the subject accident/incident/collision, EBERHARDINGER's resulting injuries and damages and constitutes conduct which must be punished and deterred by the imposition of punitive damages considering the injuries sustained.

    **WHEREFORE**, PLAINTIFF prays for judgment against FOSTER in an amount which will fully and fairly compensate PLAINTIFF for damages suffered plus interest, costs of suit and damages for delay pursuant to Pa.R.C.P. 238 and punitive damages pursuant to Section 908(2) of the Restatement (Second) of Torts.

## AMENDED COUNT IV
## STATE FARM DEFENDANTS for BREACH OF CONTRACT/ENFORCEMENT OF CONTRACTUAL OBLIGATIONS (PIP POLICY)

75.    Plaintiff hereby incorporates the preceding paragraphs as if they were set forth at length herein.

76.   At all times relevant hereto, EBERHARDINGER had a valid contract for automobile insurance with STATE FARM.  A true and correct copy of the applicable declaration sheet is attached hereto as Exhibit A.

77.   The terms and conditions of said STATE FARM insurance policy were created by STATE FARM and provided to EBERHARDINGER in the form of "State Farm Car Policy Booklet – Pennsylvania Policy Form 9838A".  A true and correct copy of State Farm Car Policy Booklet – Pennsylvania Policy From 9838A is attached hereto as Exhibit B.

78.   By and through the above-referenced auto insurance policy, EBERHARDINGER purchased and STATE FARM provided PIP/Medical coverage in the amount of $10,000.00 per person, to EBERHARDINGER, in exchange for premiums associated with said policy for insurance.

79.   EBERHARDINGER was insured at the time subject accident/incident as she was occupying her car at the time.  See Exhibit B, page 12.

80.   STATE FARM is required to provide payment for medical expenses that are incurred and result from bodily injuries sustained and arising out of the maintenance or use of a motor vehicle.  See Exhibit B, page 12  - Insuring Agreement – Coverage C2.

81.   No relevant policy exclusions apply to EBERHARDINGER.

82.   State Farm Car Policy Booklet – Pennsylvania Policy From 9838A, which policy was entirely drafted by STATE FARM, does not define "Maintenance or Use".

83.   State Farm Car Policy Booklet – Pennsylvania Policy From 9838A contains specific exclusions in other sections of the policy for gunshot wounds; no such language exists with the PIP coverage section.

84.   At all times relevant herein, EBERHARDINGER complied with her obligation to pay the required insurance premiums and the subject policy was in full force and effect on the date of the subject auto accident/incident/collision.

85.   STATE FARM has notice of the loss and was required to pay medical bills incurred by EBERHARDINGER pursuant to the applicable personal injury protection coverage issued under the same insurance policy, but has refused to provide payment for the bills incurred.

86.   EBERHARDINGER brings the within action against STATE FARM pursuant to the contractual obligations set forth in her policy of automobile insurance with STATE FARM, in order to pursue PIP/Medical coverage benefits from STATE FARM.

87.   Given the breadth and nature of those injuries sustained by EBERHARDINGER as set forth hereinabove in paragraph 65, and the

medical bills and medical liens incurred, EBERHARDINGER believes and, therefore, avers that the PIP/medical coverage possessed would have exhausted and paid at least a portion of her medical bills and medical liens incurred as a result of the injuries sustained in the subject auto accident/incident/collision.

88.    As a direct and proximate result of the above-described negligence of FOSTER, EBERHARDINGER's injuries and damages associated therewith required medical treatment.

89.    At all times pertinent hereto STATE FARM has failed and refused to pay EBERHARDINGER's medical bills, and/or liens for anything other than the orthopedic injures sustained despite EBERHARDINGER's vehicle orientation and is, therefore, in breach of the terms of the applicable auto insurance policy written by STATE FARM.

90.    As STATE FARM has not paid any monies due and payable under the applicable PIP/medical coverage provisions of the policy, in the amount of $10,000.00, STATE FARM is in breach of said contract.

**WHEREFORE**, PLAINTIFF prays for judgment against STATE FARM in an amount which will fully and fairly compensate PLAINTIFF for damages suffered plus interest, costs of suit and damages for delay pursuant to Pa.R.C.P. 238.

## AMENDED COUNT V
## STATE FARM DEFENDANTS for BREACH OF
## CONTRACT/ENFORCEMENT OF CONTRACTUAL OBLIGATIONS
## (UNDERINSURED MOTORIST POLICY)

91.   Plaintiff hereby incorporates the preceding paragraphs as if they were
set forth at length herein.

92.   At all times relevant hereto, EBERHARDINGER had a valid contract
for automobile insurance with STATE FARM.

93.   By and through the above-referenced auto insurance policy,
EBERHARDINGER purchased and STATE FARM provided
Underinsured Motorist Coverage ("UIM") in the amount of $25,000.00
per person, to EBERHARDINGER, in exchange for premiums
associated with said policy for insurance.

94.   At all times relevant herein, EBERHARDINGER complied with her
obligation to pay the required insurance premiums and the subject policy
was in full force and effect on the date of the subject auto
accident/incident/collision.

95.   STATE FARM has notice of the loss and was required to provide
Underinsured Motorist Coverage to EBERHARDINGER.   See Exhibit
"A".

96.   EBERHARDINGER brings the within action against STATE FARM
pursuant to the contractual obligations set forth in her policy of

automobile insurance with STATE FARM, in order to pursue Underinsured Motorist benefits from STATE FARM.

97.   Given the breadth and nature of those injuries sustained by EBERHARDINGER as set forth hereinabove in paragraph 65, and the medical bills, liens and wage loss incurred, EBERHARDINGER believes and, therefore, avers that the insurance policy possessed by FOSTER was inadequate to fully compensate her for the injuries sustained in the subject auto accident/incident/collision.

98.   As a direct and proximate result of the above-described negligence of FOSTER, EBERHARDINGER's injuries and damages associated therewith exceeded the value of the third party insurance policy possessed by FOSTER.

99.   At no time pertinent hereto has STATE FARM offered monies sufficient to compensate EBERHARDINGER for her injuries, wage loss, outstanding medical bills, and/or liens and is, therefore, in breach of the terms of the applicable auto insurance policy written by STATE FARM.

100.  As STATE FARM has not paid any monies due and payable under the applicable Underinsured Motorist Policy, in the amount of $25,000.00, STATE FARM is in breach of said contract.

WHEREFORE, PLAINTIFF prays for judgment against STATE FARM

in an amount which will fully and fairly compensate PLAINTIFF for damages suffered plus interest, costs of suit and damages for delay pursuant to Pa.R.C.P. 238.

## <u>AMENDED COUNT VI</u>
## STATE FARM DEFENDANTS for BAD FAITH

101.  Plaintiff hereby incorporates the preceding paragraphs as if they were set forth at length herein.

102.  At all times relevant and material hereto, STATE FARM was subject to 42 Pa.C.S.A. §8371.

103.  At all times relevant and material hereto, STATE FARM did act in bad faith towards EBERHARDINGER in the following manner:

a. Failing to acknowledge and act properly upon written and oral communications with respect to claims arising under an insurance policy;

b. Refusing to conduct a reasonable investigation based upon all the information available;

c. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of EBERHARDINGER's claim(s);

d. Compelling EBERHARDINGER to file a Breach of Contract claim and Bad Faith claim to recover the amounts due under the policy;

e. Refusing to provide the entirety of the PIP/medical coverage provided

in the policy despite EBERHARDINGER's vehicle orientation at the time of the subject accident/incident/collision.

f.  Failing to objectively and fairly evaluate EBERHARDINGER's claim(s);

g.  Failing to objectively and fairly re-evaluate EBERHARDINGER's claim(s) when new information became available;

h.  Engaging in dilatory and abusive claims handling;

i.  Failing to adopt or implement reasonable standards in evaluating EBERHARDINGER's claim(s);

j.  Acting unreasonably and unfairly in response to EBERHARDINGER's claim(s);

k.  Not attempting in good faith to effectuate a fair, prompt and equitable settlement of EBERHARDINGER's claim(s) where STATE FARM's liability under the policy had become reasonably clear;

l.  Subordinating the interests of its insured to its own financial monetary interest;

m. Failing to promptly offer reasonable payment to EBERHARDINGER and/or her medical providers;

n.  Failing to reasonably and adequately investigate EBERHARDINGER's claim(s);

o. Failing to reasonably and adequately evaluate and review the medical documentation in STATE FARM's possession related to this/these claim(s);

p. Violating the fiduciary duty/duties owed to EBERHARDINGER;

q. Acting unreasonably and unfairly by withholding PIP/medical coverage and Underinsured Motorist Benefits justly due and owing to EBERHARDINGER;

r. Failing to make an honest, intelligent and objective settlement offer;

s. Causing EBERHARDINGER to expend money on the presentation of her claims; and

t. Causing EBERHARDINGER to bear the stress and anxiety associated with litigation.

104. As set forth above in Amended Count IV, State Farm had no reasonable basis to deny EBERHARDINGER'S PIP coverage as she was insured under the policy, was injured in the use and/or maintenance of a vehicle, which vehicle was insured by STATE FARM, and no relevant exclusions apply.

105. On January 21, 2015, EBERHARDINGER'S counsel requested information about the possible exhaustion of PIP coverage.

106. On January 23, 2015, STATE FARM claim representative, Charisma

Harper, denied PIP coverage alleging that the injuries sustained did not arise from the maintenance or use of a motor vehicle, despite EBERHARDINGER'S location in said vehicle at all times pertinent hereto.

107. On February 17, 2015, EBERHARDINGER'S counsel requested clarification from Ms. Harper given EBERHARDINGER'S vehicle orientation at the time of the incident.

108. As no response was received, follow-up letters were sent on March 27, 2015, May 12, 2015, June 26, 2015.

109. By letter dated July 17, 2015, STATE FARM claim representative Debbie Camper, again denied PIP coverage on the basis that the injuries sustained were due to gun shots, despite the fact that EBERHARDINGER was engaged in the maintenance/use of her vehicle at the time of the subject incident.

110. On August 6, 2015, EBERHARDINGER'S counsel reiterated the request for clarification from Ms. Camper, which was originally sent to Ms. Harper on February 17, 2015, given EBERHARDINGER'S vehicle orientation at the time of the incident.

111. STATE FARM'S systematic and institutional failure to respond timely and/or adequately explain its refusal to provide the contracted for PIP

coverage constitutes bad faith.

112. STATE FARM'S failure to provide its contracted for PIP coverage despite numerous requests constitutes bad faith as EBERHARDINGER is entitled to PIP coverage under the policy and no relevant exclusion applies.

113. STATE FARM has taken a position regarding the interpretation of the PIP policy contrary to that of their insured despite their fiduciary duty and the fact that STATE FARM and STATE FARM alone was in a position to draft a contract free from ambiguity and to draft a contract which clearly identifies all exclusions. This behavior constitutes bad faith.

114. State Farm Car Policy Booklet – Pennsylvania Policy From 9838A, which policy was entirely drafted by STATE FARM, does not define "Maintenance or Use".

115. State Farm Car Policy Booklet – Pennsylvania Policy From 9838A contains specific exclusions in other sections of the policy for gunshot wounds; no such language exists with the PIP coverage section.

116. An insurer such as STATE FARM has a fiduciary, contractual and statutory obligation to its own insureds.

117. At all relevant times, EBERHARDINGER fully complied with the terms and conditions of the policy and all conditions precedent and

subsequent to her right of recovery under the policy.

118. For the reasons set forth above, STATE FARM has violated the policy of insurance, its obligations as an insurer, has failed to act towards EBERHARDINGER in good faith and has violated 42 Pa.C.S.A. §8371, for which STATE FARM is liable for compensatory and punitive damages, together with interest, attorney's fees and such other relief as this Honorable Court deems appropriate.

119. STATE FARM has engaged in willful, wanton and reckless conduct with regard to the welfare, interest and rights of EBERHARDINGER, and is liable for its bad faith conduct.

120. STATE FARM's conduct set forth above, violates the Pennsylvania Unfair Insurance Practices Act, 40 P.S. Chapter 4, §1171.1, et seq., which serves as evidence of bad faith.

**WHEREFORE**, PLAINTIFF prays for judgment against STATE FARM in an amount which will fully and fairly compensate PLAINTIFF for damages suffered and additional punitive damages, and any other damages allowable by 42 Pa.C.S.A. §8371, plus interest, costs of suit and damages for delay pursuant to Pa.R.C.P. 238.

Respectfully submitted,
s/ Patrick J. Best, Esq.
Patrick J. Best
18 N. 8th St.
Stroudsburg PA 18360
570-424-6899

s/ Joshua B. Goldberg, Esq.
Joshua B. Goldberg
18 N. 8th St.
Stroudsburg PA 18360
570-424-6899